IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS MATEO THOMPSON SUBIDO, | No. 2:16-CV-0079-TLN-CMK[1] |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-motion for summary judgment (Doc. 24).

/ / /

---

[1] A District Judge was assigned to this case following plaintiff's failure to inform the court regarding his election to proceed before the Magistrate Judge and following plaintiff's failure to respond to the court's February 17, 2017, order to show cause. The undersigned observes that plaintiff's failure to comply with the court's orders in this matter provides an independent basis for dismissal of the entire action as an appropriate sanction. See Local Rule 110. In the interests of justice, however, the court will nonetheless address the merits of the case.

1

# I. PROCEDURAL HISTORY

Plaintiff applied for childhood social security benefits on December 29, 2011. In the application, plaintiff claims that disability began on November 7, 2003. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 22, 2014, before Administrative Law Judge ("ALJ") Dante M. Alegre. In a June 10, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): autistic disorder; and

2. The claimant does not have an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in the regulations.

After the Appeals Council declined review on November 20, 2015, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the

Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ violated Acquiescence Ruling 04-1(9) by failing to obtain a case evaluation from a qualified medically appropriate specialist; (2) the ALJ erred in concluding that plaintiff's impairment did not satisfy Listing 112.10; (3) the ALJ failed to properly evaluate the medical opinion of Dr. Meenakshi; (4) the ALJ improperly determined that plaintiff's testimony was not credible; and (5) the ALJ failed to properly account for lay witness evidence.[2]

    A.    **Acquiescence Ruling 04-1(9)**

According to plaintiff, Acquiescence Ruling 04-1(9) requires the ALJ to base the disability determination on the record as a whole. Plaintiff argues that the ALJ violated this rule by relying on medical opinion rendered in July 2012 by Dr. Meenakshi. The essence of plaintiff's argument is that the ALJ erred by relying on one medical opinion over another.

---

[2] Plaintiff also makes an additional argument under the heading "Neither of the decision's step-three findings rest on anything substantial." Plaintiff begins by stating:

> Even argument C was essentially contained within arguments A and B, but having separately established argument C (and A), that nonexaminer Meenakshi can't count as substantial evidence and is, moreover, simply wrong, it's worth separately, momentarily, examining the fact that neither finding beyond step two has any foundation.

Having reviewed the remainder of plaintiff's "arguments" under this heading, however, the court simply cannot divine any claim of legal or factual error.

1 Because this argument is nothing more than a different way to challenge the ALJ's assessment of
2 the medical opinions, it will not be addressed separately.  Moreover, as defendant notes, whether
3 the ALJ erred with respect to evaluating competing medical opinions is not relevant to the
4 inquiry under Acquiescence Ruling 04-1(9), which requires that the ALJ make efforts to ensure
5 the record is as complete as possible.  Here, in addition to Dr. Meenakshi's opinion from July
6 2012, the ALJ considered the opinion of Dr. Gross from April 2013 as well as a letter from Dr.
7 Asaikar from September 2013.  There is simply no support for plaintiff's contention that the ALJ
8 violated Acquiescence Ruling 04-1(9).

### B. Listing 112.10

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

To meet or medically equal Listing 112.10, which describes the presumptive symptoms for disability arising from autism, the evidence must show:  (1) qualitative deficits in verbal communication, nonverbal communication, and social interaction; and (2) significantly restricted, repetitive patterns of behavior, interests, or activities.  In addition to both of these factors, the listing also requires either an extreme limitation in one or marked limitations in two of the following areas: (1) ability to understand, remember, or apply information; (2) ability to interact with others; (3) ability to concentrate, persist, or maintain pace; or (4) ability to adapt or manage oneself.

/ / /

/ / /

To functionally equal the listing, a claimant must have marked limitation in two or extreme limitation in one of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(d). A "marked" limitation exists if the impairment seriously interferes with the ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation exists if the impairment very seriously interferes with the ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a(e)(3).

The ALJ first determined that the record failed to establish that plaintiff's autism meets or medically equals the requirements of any of the listings. The ALJ then considered whether plaintiff's impairment functionally equals the severity of symptoms outlined in the listings. Plaintiff first argues that the ALJ erred by not specifically referencing Listing 112.10. This argument is foreclosed by Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990), in which the court held that it is not necessary for the ALJ to reference every different section of the listings.

Next, plaintiff argues that "the decision did not begin to properly evaluate him." The court does not agree. In considering each of the six domains of functional equivalency, the ALJ discussed the extensive medical opinion evidence, giving controlling weight to the opinion of agency reviewing doctor Meenakshi who opined that plaintiff had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being.[3] Given the ALJ's consideration of the appropriate domains in assessing functional equivalency, the court finds no

---

[3] Whether the ALJ erred in relying on Dr. Meenakshi's opinion is discussed below.

error.

   **C.   Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining

professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Meenakshi, the ALJ stated:

> At the request of this Agency, V. Meenakshi, M.D., and D. Pong, M.D., reviewed the evidence in the record and thereafter opined the claimant had less than marked limitations in acquiring and using information, in attending and completing tasks, and interacting and relating with others. He has no limitations in moving about and manipulating objects, caring for himself, and his health and physical well-being. . . .
>
> The opinion of Dr. Meenakshi and Dr. Pong are given great weight. Although these opinions are not based upon examination of the claimant, they are based upon a thorough review of the evidence in the record. The opinions are consistent overall with the education and therapy records in evidence. As discussed in greater detail above, the evidence shows the claimant has made significant improvements in functioning with treatment. However, he continues to have difficulty in some areas including organization, social functioning, and focus/concentration. Yet there were issues which he improved, but had not met the treatment goals. Although he did not require additional services, and these issues had not worsened throughout this time. Furthermore, these opinions concern subject matters within the consultant's area of medical expertise and include a detailed discussion of the evidence reviewed and relied upon in the opinion.

In giving Dr. Meenakshi's opinion "great weight," the ALJ rejected the opinions of agency reviewing doctors David Gross, Ph.D., and H. Pham, M.D., who opined that plaintiff had marked limitations in acquiring and using information. The ALJ also rejected the opinion of agency examining doctor Troy Ewing, Ph.D., who opined that plaintiff has moderate to significant impairment in his ability to adapt to changes in school or academic routine. Finally, the ALJ rejected the opinion of plaintiff's treating doctor, Shailesh Asaikar, M.D., who stated that plaintiff is very disorganized and has problems with working memory.

/ / /

/ / /

/ / /

The court finds that the ALJ erred by rejecting the opinions of treating and examining professionals based on the opinion of a non-examining reviewing source. The court also finds that the ALJ failed to set forth specific and legitimate reasons for declining to defer to the opinions of the treating and examining sources. In particular, as to Dr. Asaikar, the ALJ stated that the doctor's opinion was not supported by objective findings. However, the record reflects that Dr. Asaikar's opinion is based on an evaluation performed on January 10, 2013, in which the doctor noted the following on objective examination: plaintiff shows poor pragmatics in his communication, shows narrow focus of interests, and he is pedantic with his information. Dr. Asaikar also observed that plaintiff has very poor divergent thinking and the capability of secondary generalization.

The matter should be remanded for reconsideration of the medical opinions. The court observes that, on remand, the record would benefit from an updated consultative examination and report.

### D. Credibility Assessment

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See <u>Bunnell</u>, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See <u>Smolen</u>, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

/ / /

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> The claimant testified at the hearing he is able to get to and from school riding the bus. After school he spends his time doing homework and watching television. When he has permission from his parents he plays video games. He boxes on Saturdays and attends catechism on Sundays. He has friends. He is able to mow the lawn, mop, shop, and attend to his care. He enjoys school, reading, and running. He was able to provide titles of several novels he was reading. He talked about his social skills training course. He also stated he has some help from an aide during school, but not all the time (Hearing testimony).

\* \* \*

///

> In evaluating the persuasiveness of the claimant's testimony and statements, the undersigned notes significant inconsistencies between the claimant's alleged severity of [his] symptoms and limitations, and other evidence. The evidence shows the claimant has the ability to perform well in the regular classroom, he has consistently demonstrated improvement in his educational and overall functioning, he has been able to make friends and develop relationships with peers, his speech has improved and is understood most of the time, he is able to engage in school and other extracurricular activities, and he is able to remain independent in his care. These activities, which were reported by the claimant, his father, teachers, and providers indicate that his symptoms are not as severe as alleged.

Plaintiff argues that it is unclear whether the ALJ rejected his testimony, the testimony offered by his father Orlando Subido, or both. Plaintiff also argues that the ALJ's analysis rests on "its mistaken notion of 'improvement.'"

Plaintiff's first argument is unpersuasive because the hearing decision clearly reflects that the ALJ provided a separate credibility analysis for plaintiff's testimony. Plaintiff's second argument, however, is more persuasive. Specifically, while the evidence reveals that plaintiff does well in school, the evidence also shows that plaintiff required the assistance of a teacher almost full time. Obviously, there is no evidence indicating how well plaintiff would be doing in school absent such assistance, but it stands to reason that he does well in school at least in part due to the extensive assistance he is provided.

### E. Lay Witness Evidence

Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting the testimony from plaintiff's father, Orlando Subido, and plaintiff's teacher, Alicia Gutierrez. In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The

ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

As to Mr. Subido's statements, the ALJ stated:

> The claimant's father, Orlando D. Subido, on behalf of the claimant alleges the claimant suffers from autism that interferes with his functioning (Exhibit 3D; 8E; 11E; and hearing testimony). The claimant's father. . . submitted a Child Function Report (Age 12 to 18th birthday) dated December 29, 2011, wherein Mr. Subido reported the claimant had vision problems (nearsightednesss). The claimant's speech could be understood by people who know him well and people who did not know him well some of the time. The claimant attends school full time. In addition, he attends speech therapy and social intervention. The claimant is limited in his ability to communicate. He cannot answer or make telephone calls, deliver phone messages, repeat stories he has heard, explain why he did something, use sentences with "because," "what if," or "should have been." However, he is able to ask for what he needs and talk with family and friends. Mr. Subido explained that the claimant's speech or describing something is not always fluid.
>
> The claimant is limited in understanding and using what he has learned. He cannot read and understand sentences in comics and cartoons, read and understand stories in books, magazines, or newspapers, or understand money (make correct change). However, he is able to spell words of more than four letters, add, subtract, multiply, and divide numbers over ten, and understand, carry out, and remember simple instructions.
>
> The claimant's physical abilities are not limited. He is able to walk, run, dance, swim, ride a bike, throw a ball, jump rope, play sports, and work video game controls.
>
> The claimant's impairments affect his social activities and behaviors with others. He cannot make new friends or play team sports. However, he has friends his age, generally gets along with Mr. Subido and other adults, generally gets along all right with his brothers and sisters, and generally gets along with school teachers. Mr. Subido explained that making "new" friends can sometimes be a challenge as other children do not understand him at all times. His socialization skills still need improvement.
>
> The claimant is limited in his ability to take care of his personal needs and safety. He cannot take care of his personal hygiene, wash and put away his clothes, help around the house, cook a meal for himself, take medication, use public transportation by himself, accept criticism or correction, or

> avoid accidents. However, he is able to get to school on time, study and do homework, keep out of trouble, obey rules and ask for help when needed. He may still need to be "prompted" on performing everyday tasks including personal hygiene, washing his face, brushing his teeth and daily chores.
>
> The claimant is limited in his ability to pay attention and stick with a task. He cannot keep busy on his own, complete tasks, complete homework, or complete chores most of the time. However, he is able to work on arts and craft projects (draws, paints, knits, does woodwork). He needs a lot of prompting at this time to complete homework or tasks (Exhibit 1E).
>
> The claimant's father stated the claimant was diagnosed with autism at age 4. Since then he has made remarkable improvements, however he will have this disability his entire life. He still attends speech therapy, intervention, and requires a school aid while at school (Exhibit 1E).
>
> The claimant's father submitted an additional statement wherein he reported the claimant was diagnosed with autism at age 4. At the time the statement was completed, the claimant was attending speech therapy, socialization and required a school aid. He consistently required daily "prompting" for all tasks including waking, care of himself, and hygiene. He was described as not like "your 'typical' kid." (Exhibits 6E; and 8E).

As to Ms. Gutierrez, the ALJ stated:

> The claimant's teacher, Alicia Gutierrez submitted a Teacher Questionnaire form dated April 22, 2012, wherein Ms. Gutierrez reported knowing the claimant for eight months and spending six hours each day with the claimant. The claimant was in the sixth grade at the time and was performing at grade level in reading and math. However, he was performing at below grade level in written language.

The ALJ then summarized Ms. Gutierrez' assessment of plaintiff's abilities and added:

> The opinion of Ms. Gutierrez is given partial weight. The opinion is inconsistent with evidence showing the claimant demonstrated overall improvement in his academics. This improvement was evidenced by his grades, teacher reports, his ability to remain in the regular classroom for 98% of the school day, and his test scores. The level of services the claimant required remained essentially unchanged during this time. Moreover, the evidence shows the claimant is able to function in a regular classroom, travel to and from school independently, participate in school activities, and remain home with his brother without significant limitations (Exhibits 13E; 7F; 16F; and hearing testimony).

///

///

Contrary to defendant's assertion, the court finds that the ALJ failed to provide any reasons for rejecting lay testimony from plaintiff's father or teacher. While the ALJ summarized the lay witness testimony, he provided no reasons germane to either witness for rejecting their statements.

### IV. CONCLUSION

Based on the foregoing, the court concludes that this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above. Accordingly, the undersigned recommend that:

1. Plaintiff's motion for summary judgment (Doc. 17) be granted;
2. Defendant's cross motion for summary judgment (Doc. 24) be denied; and
3. This matter be remanded for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 22, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE